UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

**DECISION AND ORDER**
25-CR-135-A

ADEN IBRAHIM,

Defendant.

## I. BACKGROUND

Defendant is charged in a four-count Superseding Indictment: in Count 1, with being a felon-in-possession of ammunition, in violation of 18, U.S.C. §§ 922(g)(1) and 924(a)(8); in Count 2, with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); in Count 3, with possession with intent to distribute cocaine base, in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and in Count 4, with maintaining a drug-involved premises, in violation of 21 U.S.C. §§ 856(a)(1) and 856(b). Dkt. 38. All four charges stem from a July 9, 2025, incident during which officers of the Buffalo Police Department responded to a report of an "Unwanted Guest" at 40 Woodette Place, Unit 3, Buffalo, NY. Trial is scheduled to commence on December 9, 2026.

Before this Court is Defendant Aden Ibrahim's *pro se* motion seeking "to suppress search warrant for DNA." Dkt. 51. It is his third *pro se* motion to suppress. *See*, Dkt. 18 (original motion to suppress), Dkt. 21 (amended motion to suppress), Dkt. 44 (second motion to suppress).

In his first suppression motion, Defendant argued that his arrest on July 9, 2025, was not supported by probable cause, and as a result, he sought to suppress any evidence obtained in the course of his arrest. *See*, Dkt. 18, p.3; Dkt. 21, p. 6. Additionally, Defendant sought suppression of his statements to police on the ground that he interrogated by officers without receiving *Miranda* warnings. *See*, Dkt. 18, p. 2; Dkt. 21, pp. 3-5. On February 4, 2026, Magistrate Judge Roemer held a suppression hearing on Defendant's first suppression motion and heard testimony from officers Terry Polk and Michael Troiano of the Buffalo Police Department, two of the police officers who encountered Defendant on July 9, 2025. Dkt. 28. At the conclusion of the hearing, Magistrate Judge Roemer issued a Report Recommendation and Order (RR&O) in which he made certain findings of fact and conclusions of law based upon the evidence and testimony presented at the hearing. Dkt. 32. Specifically, Magistrate Judge Roemer determined that the Defendant's arrest on July 9, 2025, was supported by probable cause. *Id.*, p. 12 ("Based on the credible testimony of Officer Polk as well as Officer Polk's body camera footage, the Court finds that there was probable cause to arrest defendant for various offenses on July 9, 2025.").[1] Magistrate Judge Roemer also determined

[1] As an additional and alternative basis for determining that Defendant's Fourth Amendment constitutional right to be free from unreasonable search and seizure had not been violated, Magistrate Judge Roemer also determined that the Officers who encountered Defendant after he left 40 Woodette had reasonable suspicion to perform a *Terry* -stop and frisk of Defendant upon encountering him. Thus, Magistrate Judge Roemer found that even if the discovery of the items on Defendant's person exceeded the bounds of a lawful *Terry*-frisk for weapons, the items recovered would inevitably have been discovered upon a search incident to Defendant 's lawful arrest, after he was brought back to 40 Woodette and positively identified as the person who was trespassing there. *Id.*, pp. 16-18.

that Defendant's statements should not be suppressed as they were not the product of a custodial interrogation. *Id.*, p. 18. After Defendant failed to object to Magistrate Judge Roemer's RR&O, this Court issued a Decision and Order (D&O) adopting the RR&O and denying Defendant's motion to suppress. Dkt. 33.

On September 29, 2026, Defendant filed a second *pro se* motion to suppress. Dkt. 44. In it, Defendant essentially renewed his first suppression motion and argued that his arrest on July 9, 2025, was the result of mistaken identity and was therefore unlawful, and that the search of his person at the time of his arrest violated his Fourth Amendment rights. *Id*. Magistrate Judge Roemer determined that he had already considered and rejected such arguments in his first RR&O. Dkt. 49. To the extent that Defendant's renewed motion sought to suppress not only the evidence recovered from his person but also evidence recovered during the execution of a search warrant from the premises at 40 Woodette Place, Apartment 3, Buffalo, New York, Magistrate Judge Roemer noted that Defendant lacked standing to challenge such search has he disavowed living or staying there and failed to submit any affidavit to establish he standing to challenge such search. *Id.*, pp. 4-5. Once again, with no objections to such RR&O being filed, this Court, on November 10, issued a D&O adopting such RR&O and denying Defendant's second motion to suppress. Dkt. 59.

After Magistrate Judge Roemer issued his second RR&O recommending that this Court deny his second suppression motion but before this Court issued its D&O adopting such RR&O, Defendant filed his third *pro se* motion to suppress. Dkt. 51. In it, Defendant maintains that his initial arrest was illegal and that, therefore, all of

the evidence which flowed from it, including the DNA evidence recovered from are subject to suppression as "fruit of the poisonous tree" in that such evidence was not "attenuated from the illegal detention so as to purge [sic] initial taint." Dkt. 51, pp. 1-2. Defendant further maintains that in securing the DNA swab without his consent, law enforcement: denied him due process of law; violated his Fifth Amendment privilege against self-incrimination; violated his Sixth Amendment right to counsel; and violated his Fourth Amendment right to be free from unreasonable search and seizure. *Id.*, p. 2.

For the reasons which follow, Defendant's most recent *pro se* motion to suppress, *see*, Dkt. 51, is also **DENIED**.

## II. DISCUSSION

Defendant's current *pro se* suppression motion relies on the very same claim that this Court considered—and rejected—as part of Defendant's first suppression motion, *i.e.*, that his arrest on July 9, 2025, was undertaken without probable cause. According to Defendant, because his initial arrest occurred without probable cause, all of the evidence which flowed from it, including the DNA evidence he now seeks to suppress, is subject to suppression as fruit of the poisonous tree. *See*, Dkt. 51. However, without any new evidence or any other changed circumstances to suggest that Defendant's initial arrest was improper, his argument is meritless.

This Court, following an evidentiary hearing, has already determined that Defendant's initial arrest was supported by probable cause and was constitutional. *See*, Dkt. 32. Therefore, Defendant's instant motion, seeking suppression of the DNA evidence against him on the theory that such evidence represented the "fruit of

the poisonous tree" flowing from his unlawful arrest, is foreclosed by this Court's prior ruling. *See*, *United States v. Jones*, 43 F.4th 94, 103 (2d Cir. 2022)("We therefore conclude that precluding a criminal defendant from relitigating a suppression motion—so long as the defendant had a full and fair opportunity to litigate the issue once—is not per se unconstitutional.").

Further, Defendant's effort to suppress his DNA evidence on the ground he did not consent to provide his DNA ignores the fact that investigators had obtained a valid search warrant from Magistrate Judge McCarthy to collect such DNA. *See*, Dkt. 60-1. Defendant's motion does not challenge the validity of the DNA search warrant. "[A] search carried out pursuant to a warrant is presumed valid." *United States v. Mandell*, 752 F.3d 544, 551 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).

Also without merit is Defendant's claim that the collection of his DNA by way of the search warrant violated his due process rights. Such argument is foreclosed by the recent Second Circuit decision in *Leeper*, in which the Court rejected a defendant's claim, predicated on the Supreme Court decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that his due process rights were violated by the collection of his DNA pursuant to a warrant. As the *Leeper* Court observed, "even assuming arguendo that the *Mathews* test applies to *ex parte* search warrants for the collection of a DNA sample from a suspect via a buccal swab, the government is not required under *Mathews* to provide notice and an opportunity to be heard in connection with that warrant application, whether or not that suspect is already in custody." *United States v. Leeper*, 187 F.4th 11, 32 (2d Cir. 2026).

Regarding Defendant's claim that his Fifth Amendment rights were violated by the collection of the DNA sample, such argument also is without merit. In *Schmerber v. California*, 384 U.S. 757, 764, 761 (1966), the Supreme Court clarified that the Fifth Amendment privilege against self-incrimination does not protect a person from being compelled to produce "real or physical evidence," but rather protects against the compulsion of evidence that is "testimonial or communicative [in] nature." Here, Defendant's DNA sample was neither testimonial nor communicative in nature, and thus, his Fifth Amendment rights are not implicated. *See id*. at 765 (concluding that blood sample was admissible because it "was neither petitioner's testimony nor evidence relating to some communicative act or writing" by petitioner); *accord Toliver v. Artus*, No. 11 Civ. 1051 (MAT), 2013 WL 55692, at *9 (W.D.N.Y. Jan. 3, 2013).

Finally, Defendant's undeveloped assertion that the collection of his DNA violated his Sixth Amendment rights also lacks merit. The Sixth Amendment guarantees a "right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004). "The Supreme Court has defined critical stages of the criminal process as any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's rights to a fair trial, that is, at such critical confrontations, as at the trial itself, where the presence of counsel operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution." *United States v. Romeo*, 136 F.4th 372, 378 (2d Cir. 2025)(citations and quotations omitted). The Supreme Court has held that taking a handwriting exemplar is not a critical stage entitling a

defendant to the assistance of counsel because the defendant can take his own exemplars and challenge the prosecution's exemplars at trial. *Gilbert v. California*, 388 U.S. 263, 267 (1967). For the same reason, this Court concludes that collecting a buccal swab is not a critical stage of the criminal process. *See United States v. Lewis*, 483 F.3d 871, 874 (8th Cir. 2007). Therefore, the absence of counsel during the collection of Defendant's buccal swab did not violate his Sixth Amendment right.

## III. CONCLUSION

For all of the foregoing reasons, Defendant’s motion to suppress (Dkt. 51) is **DENIED**. The parties are directed to appear before this Court on Monday, November 16, 2026, at 9:00 AM for a further status conference in this case.

**IT IS SO ORDERED.**

__*s/Richard J. Arcara*________
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: November 13, 2026
Buffalo, New York